Bronson, J.
 

 The judge rejected evidence offered by the defendants to show that there had been no want of care, skill or prudence on the part of the master or crew of the Sandusky, and decided, that the defendants were common carriers of the plaintiffs’ boat and cargo, and were liable for the damage which had been sustained, unless it was occasioned by the act of God, or the public enemy; and further, that the defendants could not, by any contract with the plaintiffs, exempt themselves from such liability. - This presents two questions for our considera
 
 *208
 
 tion, though if the judge was wrong upon either point, there must be a new trial.
 

 1. It is a gi eat misnomer to call the defendants common carriers. or carriers of any kind in relation to the business of towing boats. Nor are they bailees of any description; for the property towed is not delivered to them, nor placed within their exclusive custody or control. It remains in the possession, and for most purposes in the exclusive care of the owners or their servants. There is no bailment within any definition of that term to be found in the books. But whether a bailment or not, it is clear that those who tow boats and vessels are not common carriers of the things
 
 towed. As we
 
 are all agreed in this opihion, and the point has been adjudged,
 
 (Caton
 
 v. Rumney, 13
 
 Wend.
 
 387,
 
 and Alexander
 
 v.
 
 Greene,
 
 3
 
 Hill,
 
 9,) I will not discuss the question more at large. It is true that the judgment in
 
 Alexander
 
 v.
 
 Greene
 
 was reversed by the court of errors. (7
 
 Hill,
 
 533.) But what particular point or principle of law was decided by the court, or what a majority of the members thought upon any particular question of law, no one can tell. It appears by the reporter’s head note, that he could not tell; and from his note at the end of the case, it is apparent that the court itself could not tell. Two merchants and two lawyers thought the defendants were common carriers, while other senators expressed a different opinion, and went upon other grounds; and it does not appear that more than four of the seventeen senators who voted for the reversal were agreed concerning any one of the questions in the case. Two efforts were made at the time to ascertain
 
 “
 
 the ground of the judgmentbut both proved abortive ; and thus the majority virtually said, that although the judgment was reversed, no point or principle of law was settled by the decision. It happened in that case, as it has happened on other occasions, that a majority' of the members of that multitudinous court made up their minds to reverse a judgment, and they did it; but not being able to agree concerning the ground of their action, they plainly enough admitted that nothing was settled by the decision. The case is not an authority for any thing: it could only have been re
 
 *209
 
 ported for the purpose of preserving the reasons of those who delivered opinions.
 

 2.
 
 It is perhaps a debatable question whether common carriers and inn-keepers can contract for a more restricted liability than the law imposes upon them in the absence of a special agreement.
 
 (Gould
 
 v.
 
 Hill, 2 Hill,
 
 623.) But there is no room for doubt that other bailees, and persons engaged in other employments, may contract for either a larger, or a more restricted liability than would be implied against them in the absence of a special contract. They are not, like common carriers and inn-keepers, bound to accept employment when offered ; nor, like them, are they tied down to a reasonable reward for their services. They are at liberty to demand «an unreasonable price before they will undertake any work or trust, or to reject employment altogether; and they may make just such stipulations as they please concerning the risk to be incurred. They may become insurers against all possible hazards, or they may say, we will answer for nothing but a loss happening through our own fraud, or want of good faith. In short, the parties stand on equal terms, and can in this matter, as they may in others, make just such a bargain as they think will answer their purpose. There is, I believe, no authority to the contrary; and on this question, as well as the other, we are all agreed. There must of course be a new trial.
 

 Although the discussion at the bar took a wider range, there is no other question in the case; and if we should attempt to decide anv other, we should neither bind ourselves, nor our successors.
 

 New trial granted.1