## Moore vs. Cross and McGervey.

Where goods are sold by A. to B. on the credit of C., and C. with full knowledge of that fact and intending to become surety for B. on the purchase, indorses the note made by B. to A., such indorsement, read in connection with the note, is a written contract "for value received," binding the indorser to pay in case the maker does not; provided a demand of the maker be first duly made, and notice of protest duly given to the indorser. DAVIES, J., dissented.

The payee in such a case, if strict form is insisted on, has a right to indorse his name on the back of the paper, "without recourse," and then to bring a suit thereon, not as payee, but as holder; especially if he sets forth in his complaint, and proves, all the facts which show that such was the understanding of the parties, and that the merchandise was delivered upon the faith of it.

Such an instrument, both in fact and in legal effect, is at once a written receipt for the goods under the name of "value," and a written promise on the part of the maker and indorser to pay for such value; the former absolutely, and the latter conditionally.

APPEAL from a judgment entered at a special term, upon the report of a referee. Anthony McGervey, a dealer in coal, applied to the plaintiff to buy coal. He had been previously dealing with George Garvin, on the faith of Cross's indorsement, and had been recommended by Garvin to apply to Moore, for coal. The plaintiff offered to sell it to him for paper to be indorsed by Cross. McGervey applied to Cross, with whom he had dealings, informing him of the proposition. Cross thereupon drew up, in his own handwriting, two promissory notes, one dated September 9, 1851, payable at four months, for $500, to James Moore, or order; the other dated September 27, 1851, payable at three months, for $300, to James Moore, or order, and McGervey signed them. Cross then indorsed them in blank, and handed them to McGervey, to be delivered to the plaintiff for coal. They were so delivered; and the coal was received by McGervey, and all parties understood that it was sold on the strength of Cross's indorsement. Moore got a friend of his, named McNamee, to indorse them for his accommodation, and got them discounted at the Atlantic Bank, through McNamee's account. When they became due they were protested in the usual way, and notice of demand and non-payment in the usual manner given to the indorser, Cross. The

plaintiff took them up from the bank, commenced suit on them against the maker, as maker, and against Cross, setting forth the contract of indorsement. McGervey did not appear in the suit. The defendant Cross answered, putting in issue, 1st. The presentment for payment to the maker, at maturity, and asserting, 2d. That he was an accommodation indorser for the plaintiff's benefit, for purposes of discount; that the plaintiff knew of it, and got the notes discounted for his own benefit, and afterwards took them up. 3d. That the defendant was second indorser, and was not liable to the plaintiff, who was first indorser. 4th. That McGervey paid the notes to the plaintiff by an order for coal. 5th. That the maker had not given these notes to the plaintiff to pay for coal with the defendant's knowledge. Issue was joined, cause referred to Lucius Robinson and tried. The referee found for the plaintiff. Appeal was taken to the general term, which reversed the judgment, on the ground that the evidence given on that trial was insufficient to show a liability on the part of Cross. Upon that decision the plaintiff moved and had his complaint amended, upon which issue was joined. The cause was again tried before the same referee. The plaintiff produced, on the trial, the notes in suit, proved their presentment and demand for payment, non-payment and notice of protest. He proved also, that the plaintiff and defendant McGervey, were coal dealers; that the notes were drawn up in Cross's handwriting, indorsed by Cross for McGervey's accommodation, to be given to Moore in payment for coal sold on the faith of those indorsements, to which contract of sale Cross was privy and assenting. Upon these and other facts the plaintiff rested. The defendant Cross introduced no evidence, and the referee found for the plaintiff a second time. From the judgment entered upon his report, Cross appealed. The appeal was first heard at a general term held in the first district, in October, 1856, before Justices ROOSEVELT, CLERKE and DAVIES, and on the 3d day of November thereafter, a majority of the court (Justices CLERKE and DAVIES) united in a decision reversing the judgment of the special term; ROOSEVELT, J., dissenting. The plaintiff ap-

plied for a re-argument, which motion was granted. The cause coming on for re-argument, at the general term in February, 1857, the presiding justice (MITCHELL) stated that the court had concluded not to hear the case re-argued ; that as it presented questions which would doubtless lead the parties to carry the case to the court of appeals, he should adopt *pro forma* the opinion of Justice ROOSEVELT, (which follows,) and vote for an affirmance of the judgment below. Justice DAVIES said he should adhere to the opinion given by Justice CLERKE, on the first hearing.

*P. V. Remsen,* for the appellant.

*D. McMahon, jun.,* for the plaintiff.

ROOSEVELT, J. It is an error as it seems to me to say that this is a suit by a payee, as payee, against an indorser. Stated nakedly in that form the proposition involves at first view the absurdity of a principal suing his own surety. The plaintiff in this case, although in fact payee of the notes, does not sue *as payee* but as *indorsee* and *holder*. Ordinarily, no doubt, a prior party cannot sue a subsequent party to a note. But the reason on which the rule is founded will show that the rule is not applicable to a case like the present. Where a subsequent indorser pays a note he is usually entitled to a remedy over against the prior parties as for moneys paid to their use. And to prevent circuity of action, therefore,they are not allowed to sue him when the very recovery would constitute in turn the basis of an action for precisely the same amount against them.

In this case, however, if Cross, the indorser, should be made to pay Moore, the payee, would he have a claim against Moore to be reimbursed? Clearly he would not. He would only have paid to Moore a debt which he justly owed to Moore ; and as to which, as between him and Moore, on the facts proved, he was as much a principal as McGervey, the maker of the note.

The referee, whose decision is appealed from by the defendants, reports that previous to the making and indorsing of the

Moore v. Cross.

notes, McGervey applied to Moore to purchase from him a quantity of coal, and that Moore agreed to sell it to him "provided he would give him, in payment for the same, paper indorsed by the defendant, John A. Cross." Both Cross and McGervey agreed to the condition; both made, indorsed and delivered the notes with that understanding, and they both obtained the coal from Moore, on the credit of both, and more especially of Cross. The referee reports expressly that "the notes were indorsed and delivered by Cross with the intent of procuring for McGervey a credit with the plaintiff for the coal." How then could Cross, if he paid the notes to Moore, turn around upon Moore to refund?

It was the clear intention of the parties, that Cross, if he paid the note as indorser, was to have recourse to McGervey, the maker, and not to Moore the payee; and that Moore, if he afterwards, for form's sake indorsed it also, might add to his indorsement the words "without recourse." That such an indorsement would have been regular, and matter of right, was expressly held by the chancellor, in *Hall* v. *Newcomb*, (7 *Hill*, 419.) And it was further held, that the effect of such special indorsement would be to leave the second indorser liable to a *bona fide* holder, and without any remedy over against the payee.

Something has been said about the statute requiring certain contracts to be in writing, and among them "every special promise to answer for the debt, default or miscarriage of another person." And is not Cross's contract in writing? By the terms of the note it will be recollected McGervey promised for value received to pay Moore eight hundred dollars, and Cross, who himself wrote the notes, at the same time and before delivery to Moore, and before and without any previous indorsement by Moore, put his name on the back of them knowing that the coal would only be sold on his credit. Did not Cross by such an indorsement promise in writing, under the terms "value received," to pay Moore for the coal about to be delivered to McGervey? Was there any other condition, express or implied, in his engagement, except the usual condition attached to all cases of general indorsement? Was not the whole instrument,

taken togther, the face and the indorsement, "a note of the contract made in writing, (as the statute requires) express-ing the consideration, and subscribed by the parties to be charged?" That the words "value received" are a sufficient expression of the consideration to comply with the statute, was decided in *Douglass* v. *Howland,* (24 *Wend.* 35,) and that their insertion in the body of the note instead of immediately over the indorser's signature on the back, is also sufficient was decided in *Parks* v. *Brinkerhoff,* (2 *Hill,* 663.) The instrument then, when handed to Moore, both in fact and in legal effect was at once a written receipt for the coal under the name of "value" and a written promise on the part of both McGervey and Cross to pay for such value, the former absolutely, and the latter con-ditionally. A promise in both its parts too clearly binding, both in law and justice, to require any argument.

A further answer, however, to the objection is, that Cross's agreement was to pay not "the debt of another," as the statute expresses it, but his own debt. The whole transaction was si-multaneous. The sale was on the credit of Cross. It was not a case of pre-existing indebtedness of McGervey, which Cross en-gaged to discharge. Cross in effect said to Moore, "if you will sell and deliver to McGervey a cargo of coal on three and four months' credit, I will pay you for it, provided you shall first make your demand of him and give me immediate notice of his neglect or refusal." In the case of *Spies* v. *Gilmore,* (1 *Comst.* 321,) the court of appeals held that where a party without any special words of guaranty, puts his name on the back of a note as first indorser, he not being the payee, but intending to be surety to the payee, the effect of the transaction is to charge him, not as an absolute guarantor, it is true, but as an ordinary indorser, entitled like other indorsers to notice of protest.

The whole reasoning of the court in that case *assumes* that had there been a regular demand of the maker, and due notice of protest to the indorser, no question could have been made as to the liability of the indorser. A mere blank indorsement not strictly in form according to commercial usage creates, it was held, (and such no doubt is the intention of the parties in such

cases,) no other or greater liability than it would have created had the usual custom been pursued of making the paper payable in the first instance to the intended indorser instead of immediately to the intended payee.

In the case of *Hall* v. *Farmer*, (2 *Comst.* 553,) the note was not indorsed in blank but was specially guaranteed. It was also for an existing debt of the maker, a balance of account. The agreement of guaranty was written out both in form and substance as a guaranty, and that too before and not after it was signed by the surety. It was therefore, in all its parts, an express written contract excluding all implication and all room for parol proof to add to or vary its terms. No consideration was stated in it, and no new credit either in value or time was given upon the strength of it. The body of the note was a mere promise, fixing no period of payment and of course giving no indulgence, on the back of which was indorsed the words, " we the undersigned guaranty the payment of the within. John Farmer. H. W. Doolittle." No value received was admitted in writing, and none existed in fact. The engagement, as respected all the parties, was purely gratuitous, and purported to be nothing else. Such an engagement every body knows, however binding in honor, cannot be enforced in law. The decision, therefore, " *as might have been expected*," was in favor of the defendants, but as the reporter's note says, it settled no general principle. Whether the judgment was founded on the want of consideration in fact for the promise, or on the want of consideration "expressed," (both of which objections existed,) does not appear. The judges were divided, three to four, and one (Judge Bronson) gave no opinion. The majority also, as to the grounds of decision were divided among themselves. The reasons of the majority were not given at length, except by a reference to the previous case of *Durham* v. *Manrow* at page 533 of the same volume, which was a case also of express written guaranty, in the words, " we guaranty the payment of the within note." This guaranty, however, unlike the other, was given in payment for a horse. "It was part of the bargain for the horse and, with the consent of *Moulthrop*, [the surety.] The two engaged

for the payment of the debt of one of them in a particular way. In substance it was a direct original undertaking." Such is the language of Judge Strong, adopted by the majority of the court of appeals, in affirming the judgment of the supreme court, which held the defendants liable on the guaranty, notwithstanding that the consideration was not expressed in the undertaking. And yet this decision in favor of the then plaintiff Durham is cited as authority against the now plaintiff Moore. As I read it, its purport is precisely the reverse. It holds in effect that *no writing was necessary for the promise*, and as a consequence that the consideration in such case, if there be one, in fact, need not be expressed in writing. Parting with the horse was the consideration, and that was on the faith and credit of the guarantors. The cases of *Parker* v. *Bradley*, (2 *Hill*, 584,) and *Kingsley* v. *Balcome*, (4 *Barb.* 131,) are to the same effect.

The plaintiff's complaint in the present action, as originally framed, was merely on the notes, averring demand and protest, and due notice to Cross as indorser, no part of which statement was denied. Cross in his answer defended himself on the ground that Moore was the payee, and that he had indorsed the paper for Moore's accommodation and not McGervey's, which, if true, would have been a perfect defense. But, as we have seen, it was not true. He indorsed the notes to accommodate McGervey and secure Moore, and not to accommodate Moore and secure the bank. Cross's account of the transaction on this point, as set up in his answer, is shown by the proof and found by the verdict to have been at variance with the fact. Had it been sustained by the evidence it would have been not only a legal but a just defense. Being unsustained it was of course no defense, either just or otherwise. Failing in that attempt, Cross then placed himself on the supposed general rule of law that the payee of a note cannot sue an indorser. To meet this objection, and bring the case within the exceptions to the rule, the plaintiff by permission of the general term amended his complaint, by adding a special statement of the whole transaction. On that complaint, and not on the complaint as originally framed,

Moore *v.* Cross.

the rights of the parties are now to be disposed of. The proceeding in its present shape, to use the ancient phraseology, is an action on the case, a quasi bill in equity, in which mere form is to be disregarded, and justice to be administered according to the substantial rights of the parties. The court is to look not to the mere note, nor to the usual rules of pleading on mere notes drawn in the ordinary way, but to the whole contract express and implied, of which the sale and delivery of the coal, with their attendant circumstances, as well as the note and the peculiar manner of making, indorsing and delivering it, formed important parts.

Viewing the case in this light, the whole case and not a mere fragment, it is perfectly clear, (as it seems to me, to use the language of the referee,) that when Cross wrote, indorsed and delivered the notes, he intended one of two things, either to bind himself to pay Moore the amount of them, or else to defraud him out of the coal which he knew was sold on the strength of his indorsement. The court must now determine which of these intentions it will carry into effect. A decision in favor of the latter of the two would, in my judgment, be something new and much to be deplored in the history of the administration of justice. The judgment for the plaintiff should be affirmed with costs.

MITCHELL, P. J., concurred.

DAVIES, J., dissented, for the reasons stated in the following opinion, delivered by Justice CLERKE, on the first hearing, which opinion was adopted by Justice DAVIES, as expressing his views.

CLERKE, J. This is an action on a promissory note, by the payee against McGervey as maker, and Cross, whose name appears as indorser. The defendant Cross is liable, if at all, either as indorser or as guarantor.

As the complaint now stands, it appears that the promissory note in question was made by McGervey, payable to the order of Moore, (the plaintiff,) and was indorsed by Cross, in blank,

at the time it was delivered to the plaintiff, for the purpose of paying for coal, sold and delivered by the plaintiff to McGervey, on the credit of this indorsement. The note is the gravamen of the action; the circumstances, under which it was given, are merely its incidents.

I. The defendant Cross cannot be made chargeable as indorser. (*Herrick* v. *Carman*, 10 *John.* 224. *S. C.* 12 *id.* 159. *Ellis* v. *Brown,* 6 *Barb.* 282.) It would be inconsistent with the principles which have always prevailed in commercial law, relating to negotiable paper, if a subsequent indorser, as such, could be liable to a previous indorser. This seems to me inseparable from the nature and form of the instrument, and from the qualities which the law impresses upon it. It is negotiable and transferable, by indorsement in blank; and as each holder tranfers and indorses it to the next, he makes himself liable, from the terms of the contract, only to such, or any subsequent holder, to whom it is successively transferred, unless, by indorsing it "without recourse" he exempts himself from all liability connected with it; so that it would be at variance with the essential properties of negotiable paper, and would be reversing the established order of liability, to make a subsequent indorser liable to a preceding one. In short, a subsequent indorser cannot be responsible to a previous indorser, any more than such previous indorser can be made responsible to the maker.

In *Hall* v. *Newcomb*, (7 *Hill*, 416,) the marginal note of the reporter contains an erroneous statement of the decision of the court, and of the import of the chancellor's opinion. It is stated in the note, that on an indorsement, analogous to that under consideration in this case, the indorser could not be made liable to the payee as guarantor or maker, "*but only as indorser.*" There is nothing in the decision, or in any of the opinions delivered by other members of the court, to warrant the assertion that an action can be maintained against him as indorser by the payee. The only question before the court was whether he could be sued as guarantor or general surety. No notice of non-payment had been served upon the defendant; and

Moore *v.* Cross.

to repair the consequences of this omission, the holder of the note (being also the payee) declared against him in one count as maker, and in another as guarantor. The court for the correction of errors decided that the action on these counts could not be sustained; affirming the decision of the N. Y. common pleas and that of the supreme court. The chancellor, in his opinion, expressly states, that a second indorser "can in no event be made legally liable to the first indorser." He adds, "when such a note is presented to the accommodation indorser, and is indorsed by him, without having been previously indorsed by the person to whose order the same is payable, the latter may, at the time he puts his indorsement upon it, indorse it specially without recourse to himself; so as to leave the second indorser liable to any person into whose hands it may subsequently come for a good consideration, and without any remedy over against the first indorser;" and again, "or if the object of the second indorser was to enable the drawer, as in this case, to obtain money from the payee of the note upon the credit of such accommodation indorser, he may indorse it in the same way, 'without recourse,' and, by such indorsement, may either make it payable to the second indorser or to the bearer. And such original payee may then, as the legal holder and owner of the note, recover thereon against such second indorser, *upon a declaration stating such special indorsement of the note to him by the second indorser.*" No such machinery has been employed in the case under consideration; and if the plan suggested by the chancellor had been adopted by the payee of this note, I doubt whether it would have been, at this day, held available. The suggestion was a mere *dictum*, not at all necessary to the decision of the point under discussion, and was pronounced by Senator Bockee as "a sort of finesse and shuffling game," below the dignity of the law. As that senator very properly remarked, "we have no right to resort to practices changing the character and liability of parties." People must learn to make their own contracts, and to make them in conformity with the law. Otherwise courts of justice will become a resort for the reparation of blunders, which the exercise of ordinary caution

can at all times prevent, instead of being the dispensers of a
settled and enlightened system of jurisprudence, founded on
great general principles of justice and utility. The disturb-
ance of general principles on subjects in relation to which gen-
eral principles manifestly exist, is productive of much greater
evil than the detriment which individuals may occasionally suf-
fer from their unwavering application.

II. Neither is the defendant (Cross) liable as guarantor.
The question involved in this part of the subject, is now set at
rest in this state. In the case above referred to, *Hall* v. *New-
comb*, (7 *Hill*, 416,) it was expressly decided, in the court for the
correction of errors, that " where a man writes his name in blank
upon the back of a negotiable promissory note, he only agrees that
he will pay the note to the holder, on receiving due notice that the
maker, upon demand made at the proper time, has neglected to pay
it. *Mere proof that he indorsed the paper to enable the maker
to raise money on it, does not change the nature of his legal
liability as indorser,* where the note is in the hands of a *bona
fide* holder for a good consideration. For the courts to allow
parol proof to charge a mere surety, beyond the legal effect of
his written blank indorsement on such paper, would bring them
in direct conflict with the provisions of the statute of frauds."
(2 *R. S.* 135. § 2, *subd.* 2.) The doctrine of this case is fully
recognized by the court of appeals in *Spies* v. *Gilmore*, (1 *Com.*
321.) The subsequent cases of *Durham and Moulthrop* v.
*Manrow*, (2 *id.* 533 ;) *Hall* v. *Farmer*, (*Id.* 553,) and *Brews-
ter* v. *Silence*, (4 *Seld.* 207,) relate to the effect of a guaranty
in express terms upon the back of the note, without stating the
consideration, as " we guaranty the payment of the within
note." In the first of these cases, it was proved that Durham,
(one of the defendants below,) was the payee of the note ; that
he had purchased a house of the plaintiff on the day the guaranty
was dated, and, in part payment therefor, transferred to him the
note with the guaranty indorsed thereon. Moulthrop, the
other defendant, signing the guaranty at the request of, and as
surety for Durham. The court decided that it was valid, on
the ground that an original consideration, in fact, was proved ;

Moore v. Cross.

and this decision would be analogous to the case before us, in relation to the liability of Cross as guarantor, if a guaranty in express terms, instead of a blank indorsement, was written on this note. The next case, *Hall* v. *Farmer and Doolittle*, (2 *Comst.* 553,) was similar to *Durham and Moulthrop* v. *Manrow*, as to the form of the guaranty; but, it was proved that it had been given for an antecedent debt; and the court, consequently, decided against the validity of the guaranty. The last reported case in the court of appeals on this subject, I believe, is that of *Brewster* v. *Silence*, (4 *Seld.* 207.) It overrules *Durham and Moulthrop* v. *Manrow*, and expressly decides, that the guaranty, in all cases, *must be in writing* in direct terms, and must express the consideration upon which it is made, and that the consideration cannot be supplied by parol proof. *A fortiori*, it cannot be supplied, as in the case before us, where there is no express guaranty, but merely a blank indorsement.

It is plain, therefore, that the plaintiff cannot recover, while any respect is to be shown to established principles, and to a current of authority in the highest court of appellate jurisdiction. Something was said about the right of the plaintiff to reform this contract, so as to place the name of the defendant Cross on the note as a previous indorser, and, I suppose, also to substitute his name as payee, instead of that of the plaintiff. I need scarcely say, that if this can be done at all it cannot be done in this action. The action has not been brought for any such purpose; and of course, the defendant has had no opportunity of adducing evidence, or of being heard, upon such a suggestion. Although we have abolished the old forms of action, we have not abolished allegations and proofs. In other words, we have not abolished the right of defense in courts of justice.

The judgment should be for the defendant with costs.

Judgment affirmed.

[NEW YORK GENERAL TERM, February 12, 1857. *Mitchell, Roosevelt* and *Davies*, Justices.]