# WILLIAM MILTON *v.* HUDSON RIVER STEAMBOAT COMPANY.

*Breach of Contract—Contributory Negligence—Measure of Damages.*

Where a steamboat company contracted to tow a canal-boat loaded with staves, &c., to New York, and to give the boat a particular position in the tow, but instead gave it a different and more dangerous position, in consequence of which a portion of the cargo was lost, but which loss would not have happened had the captain and crew of the canal-boat not been guilty of negligence and unskilfulness in the management of the same, the Court held that notwithstanding the breach of contract on the part of the steamboat company, the owner of the cargo, &c., could not recover, because of the negligent and unskilful conduct of his servants and agents in the management of the canal-boat.

THIS action was brought by the Plaintiff to recover damages for the loss of a portion of the cargo of the canal-boat Caloric, which was washed overboard and lost on the voyage from Albany to New York.

The referee found " that in the month of October, 1860, the Plaintiff chartered and hired the canal-boat Caloric, for the purpose of transferring a cargo of staves and headings from Onondaga county to New York, paying the captain a price per day for his own and his crew's services; that the boat was several years old; was open, without combings on her sides to protect her from the running waves, and was not strong; that the Defendants did contract to tow the boat from Albany to New York, and that she should be placed between two other boats; that in locating the boat in the tow, the Defendants did not place her between two other boats, but placed her on the outside of a tier of five boats, being on the right or westerly side going down the river; that an easterly wind was prevailing, and by the waves and storms a portion of the cargo was washed away and lost, and that certain amounts were expended in preserving other portions of the cargo."

The referee further finds " that the crew of the Caloric did not exercise proper care over the boat in the position in which it was placed." He further finds " that if the Caloric had been placed

and fastened between two deck boats in the tier in which she was towed, notwithstanding the want of care in trimming the boat, and notwithstanding the want of skill or otherwise on the part of her crew, the loss of property would not have occurred, and the Plaintiff would not have sustained the injury complained of."

The referee reported in favor of the Plaintiff, and the judgment upon his report was affirmed by the General Term of the Fifth District.

The Defendants now appeal to this Court.

*George P. Comstock* for Appellant.

*Daniel Pratt* for Respondents.

HUNT, J.—The Defendants contracted to tow the Plaintiff's boat, with her cargo, from Albany to New York, and to use care and diligence in the performance of this undertaking. The former portion of this agreement was express. The latter was implied. The Defendants made a further express agreement that the boat should be placed in a particular position in the fleet of boats of which she formed a part.

The boat was towed to her destination, but was placed in a different position from that agreed to be assigned to her.

Her cargo was lost and damaged by the waves and storms upon the river while in this transit.

This injury would not have occurred had the boat been placed in the position agreed upon.

Here is an agreement duly made, a breach, and an injury resulting from such breach. Stopping here, the Plaintiff's cause of action is perfect.

The Defendants now answer to the claim thus made upon them, that it is true the contract was made as alleged, and the loss occurred as stated, and that it would not have occurred had the boat been located as agreed upon; but they say further, that no loss would have occurred to the boat or her cargo, even as she was placed, if proper care had been exercised by those in charge of her. The question is thus presented whether the Defendants' failure to perform the contract as agreed on their part relieved

the Plaintiff from the necessity of care and attention on his part. The referee's finding of facts is conclusive upon us, and is to be justly and fairly construed.

I construe it to mean that the Caloric was not perfectly trimmed by those in charge of her ; that there was a want of skill and a want of care in her management which caused the loss in question.

The referee does not say this in precise words, but his language is fairly and justly open to this interpretation and to none other.

" I find that the crew of the Caloric did not exercise proper care over the boat in the position in which it was placed. I further find that if the Caloric had been placed and fastened between two deck boats, in the tier of boats in which she was placed, notwithstanding the want of care in trimming the boat, and notwithstanding the want of skill or otherwise on the part of her crew, the loss of property would not have occurred," &c.

Want of care in trimming the boat, and want of skill in her management, are here clearly stated ; and the implication is strong that they caused the loss, as the referee says that notwithstanding this, the loss would not have occurred if she had been placed between two other boats.

While the general rule is too familiar for discussion, that a party cannot recover for the loss of his property, or from injury to his person, when his own negligence has to any extent contributed to the result, it is insisted that the principle does not apply to a case like the present.

(Mackay *v.* New York Central R. R. Co., 35 N. Y. 75 ; Ernst *v.* Hudson R. R. R., id. 9 ; Deyo *v.* N. Y. Central R. R. Co., 34 N. Y. 9 ; Brown *v.* Same, id. 404 ; Tonawanda R. R. Co. *v.* Munger, 4 N. Y. 349 ; S. C. 5 Denio, 255 ; Railroad Co. *v.* Aspell, 23 Penn. R. 147.)

It is said that the Plaintiff may have known his crew to have been careless or ignorant, and may have intended to guard himself in this respect by securing an inside position for his boat.

Had the present been an action upon a policy of insurance, this argument would have been quite satisfactory. In such a case,

negligence of servants or agents is one of the perils insured against, and this is well understood by both parties to the contract. The Defendants did not undertake such a risk in the contract in question; but they had a right, as in all similar contracts, to look for reasonable care and attention on the part of the Plaintiff in the management of his property.

The Plaintiff could only have obtained the benefit of such an argument by an express agreement with the Defendants that they would be liable for damages, notwithstanding the occurrence of any negligence on the part of the Plaintiff and his agents during the voyage. Doubtless it was competent to the Defendants to make such a bargain, but they do not appear to have done so in the present instance. They were not insured against the waves and storms. They are not common carriers (3 Hill, 9; 7 id. 533; 2 Coms. 204; 4 Seld. 375).

We are to look, then, at the actual cause of the loss, to determine the liability and its extent.

Wilson *v.* The Newport Dock Company (1 Law Reports, Court of Exchequer, 177, 191) is strongly in point.

In that case it appeared that the Defendants were the proprietors of a dock on the river Usk, connecting nearly with the ocean, which was used for the reception of ships inside the dock for the purpose of repair. On a day and a time named they agreed with the Plaintiff to receive and repair his ship. The ship was towed down to the dock at the time appointed, but owing to a breaking of the gate-chains of the dock the Defendants could not receive her.

A discussion arose between the pilot and the captain as to what should be done with the vessel; whether she should be taken up the river to where she came from, or to a place called West Point, or into deep water, or remain where she was. Eventually the anchor was cast, and the ship remained where she was, outside of the dock. In a few hours she grounded on a sand bank, and broke her back. The action was to recover for the damages occasioned by the injury. The jury found affirmatively that neither the captain nor the pilot was guilty of negligence, but were unable to

agree upon an answer to the question, what ought to have been done with the ship.    On that finding a verdict was directed to be entered for the Plaintiff.    On appeal to the Court of Exchequer, it was held that the finding of the jury was not sufficient to enable the Court to draw any conclusion as to whether the loss was occasioned under circumstances rendering the Defendants liable for the damage to the ship, as a consequence of their breach of contract, and a new trial was ordered.    Notwithstanding the admitted breach of a precise contract, and notwithstanding the affirmative finding that neither the captain nor the pilot was in fault, Pollock, C. B., says : " If there was any place of safety to which the vessel might have been taken, and could have been taken, we think the Plaintiff is not entitled to recover.    The jury could not agree on an answer to this question.    If they had found this question in the affirmative, we think the Plaintiff was clearly not entitled to recover, and we presume the Judge would have directed a verdict for the Defendants."    If it had been conceded, as in the case before us, that the captain had been negligent or in fault, it is manifest that a verdict would have been ordered for the Defendant.

The question is essentially one of damages.    The Defendants were guilty of a breach of their contract, and therefore liable at least to nominal damages.    When a claim to further damages is preferred, the question at once arises, did the damage claimed flow directly from a breach of the contract, or was it a remote result; or was it caused or aggravated by the conduct of the Plaintiff?    If within the latter suggestion, although it may have been proximate, the Plaintiff cannot recover.    The question of proximate or remote damages was learnedly discussed in the case of Wilson v. The Newport Dock Co. (sup.), and in Hadley v. Baxendale (9 Exch. R. 341) ; and in Boyd v. Fitt (14 Irish Com. Law Rep. 43), and has been examined in this Court in Griffin v. Colver (16 N. Y. R. 494) ; and in Hamilton v. McPherson (28 N. Y. R. 72).

The rule is established by these cases that the damages to be recovered are those that flow naturally and directly from the breach of the contract; that they do not embrace speculative

profits, nor damages which could have been avoided by the reasonable exertions of the party injured; and that if such damages are enhanced by his negligence or wilfulness, the increased loss justly falls on him.

This principle is applicable to the present case. The Defendants are liable to pay all damages which the Plaintiff has sustained by a failure to locate his boat between two other boats; but the damages must have been the immediate result of such failure to locate, and not have been caused or aggravated by the Plaintiff's own negligence. It appears expressly, however, that if his servants and agents had made reasonable exertions to protect his property, the loss in question would not have occurred. He cannot, therefore, call upon the Defendants to respond.

It is urged by the Plaintiff's counsel that this principle of contributory negligence does not apply in cases of contract, but only to cases where the action is founded on tort. Many of the cases above recited were upon contract. The case of Hamilton *v.* McPherson (sup.), was that of a contract to transport oats from Perth, in Canada, to Oswego, within a given time. In consequence of failure to transport them within the appointed time, the oats became heated and mouldy. Here was a case of contract, and where the damages resulted directly from the breach; and leaving the transaction as I have thus far stated it, the Plaintiff was entitled to recover the damages to the oats.

When, however, it further appeared that, notwithstanding the breach as to time, the oats would not have been injured if they had been handled and stirred, it was held that the damage resulted as well from a failure to bestow the required care upon them as from the delay in transportation, and that the Plaintiff could not recover. In many of the railroad cases already cited, and the others with which our reports abound, the action is based upon an express contract safely to carry the Plaintiff or his property, and an alleged breach of this contract; and it is in such cases that the principle of contributory negligence is laid down.

The case of Davis *v.* Garrett (6 Bingh. R. 716), cited by the Plaintiff, is an authority on the point of the nearness of the

damages caused by the Defendant's breach of contract. In that case the Plaintiff put on board the Defendant's barge, lime, to be transported from the Medway to London. The master unnecessarily deviated from the usual course, and during the deviation a tempest wet the lime, and the barge taking fire thereby, the whole was lost.

It was objected that the damage was not sufficiently proximate, inasmuch as the loss might have occurred by the same tempest if the barge had proceeded in her direct course. The Court held against the objection, and that the Defendant could not set up against his own wrongful act the bare possibility of a loss, if his wrongful act had not been committed. The question is not presented of how the matter would stand upon such a claim for damages, if the Plaintiff's own wrongful or negligent act had contributed to the result.

The case of Parmalee *v.* Wilks (22 Barb. 539), affirmed in this Court, presents a similar principle.

The Defendant there contracted to transfer a raft of logs from Port Maitland, in Canada, to Black Rock, near Buffalo, and to start at a given hour in the morning. He did not start till several hours after the time agreed upon, and by the occurrence of a storm the raft was broken up and all the logs scattered over the lake. The jury found that the accident would not have occurred if the Defendant had commenced the voyage at the time agreed upon. The Court held that the Plaintiff had the right to make the time of departure an essential part of his contract, that he had done so in the case under consideration; and it was found that the loss occurred in consequence of the Defendant's failure to comply with his contract in that respect, and that he must respond in damages.

Like the case last cited, it was a question of proximateness or remoteness of damage simply.

These cases are authorities to show, if no question of his own negligence or that of his servants had intervened, that the loss of the headings and the staves from the Caloric was sufficiently proximate, and that it did not lie in the Defendants' mouth to say that

perhaps the same loss would have occurred if the boat had been placed where the Defendants had agreed to place her.

I think the principle of contributory negligence is applicable here, and that the Plaintiff cannot recover from this finding of facts.

The judgment upon the report of the referee, and the judgment of the General Term, should be reversed, and judgment ordered for the Defendants, with costs.

GROVER, J.—The findings of the referee must be assumed as the facts of the case. Such findings cannot be reviewed in this Court upon the weight of evidence.

It must therefore be assumed that the Defendant agreed with the Plaintiff to tow his boat from Albany to New York, placed between two deck boats in the tow; that instead of so placing the boat, he put it upon the outside of the tow, on the west side; that the boat was somewhat careened when placed in the tow, and on its passage careened still more, so as to take in water over the side, causing the boat to sink to such an extent that a portion of the cargo, consisting of staves and headings, washed off from the boat and was lost. That if the boat had been placed in the tow as agreed, such loss would not have happened, notwithstanding the negligence of the crew of the Plaintiff's boat. That there was a master and crew on board the Plaintiff's boat during the passage; that they did not exercise proper care of the boat in the situation in which she was in fact placed.

The particulars showing want of care are not expressly found, but are perfectly obvious from the finding. First, in not preventing the careening of the boat, by shifting a portion of the cargo upon the boat to the opposite side. Second, in not giving notice of the situation of the boat to the steamer having it in tow. The referee does not expressly find that the loss would not have happened in the situation in which the boat was placed had proper care been exercised by the captain and crew, but that such was his conclusion appears from his findings of fact, taken in connection with the legal conclusion found, that a want of skill or care

on the part of the crew, which would not have resulted in a loss to the Plaintiff if the Defendant had towed his boat in the manner agreed, does not exempt the Defendants from the obligations of the contract.

This legal conclusion, and the finding of want of care in the master of the boat and crew, are wholly superfluous upon any other hypothesis.

The question comes to this—whether the Defendant, having agreed to tow the Plaintiff's boat in a particular position, where loss would not have occurred, and in violation of his agreement places the boat in a different position, where a loss does occur, but which would not but for the negligence of the master and crew in charge of the boat, is liable for such loss?

The Defendant was not a common carrier, or liable as such .(Wells *v.* Steam Nav. Co., 2 Coms. 204).

He is liable for a breach of his contract, but only for such damages as the opposite party, by reasonable care and diligence, could not guard against (Miller *v.* Mariner's Church, 7 Greenleaf, 51). Indeed the principle may be regarded as elementary, and founded not only in reasons of public policy, but common honesty.

It follows that the Defendant is not liable for the damages recovered in this action.

Cases upon contracts of insurance have no analogy to the present case.

The judgment appealed from must be reversed, and a new trial ordered.

·. All concur.

Reversed.

JOEL TIFFANY,
State Reporter.
