JAMES DENICK, APPELLANT, *v.* WILLIAM B. HUBBARD, RESPONDENT.

*Promissory note — the signing of it by a holder is not a material alteration — Extension of time — to discharge a surety it must be founded upon a good (not a usurious) consideration — Requisites of a notice by the surety requiring a creditor to enforce payment from the debtor.*

The signing of a promissory note by an owner thereof at the end and before the signatures of the makers, without their knowledge or consent, is not a material alteration of the note and does not render it invalid as to those who had previously executed it.

*Chappell* v. *Spencer* (23 Barb., 584) and *McVean* v. *Scott* (46 id., 379) not followed.

An agreement to extend the time of payment of a debt, if made in consideration of the payment of a usurious bonus is void, and does not operate to discharge the debtor's sureties.

In order that the failure of a creditor to enforce the payment of a debt, when requested by one who is liable as a surety therefor, shall operate to discharge the latter, the notice given to the creditor must be clear and explicit, and he must be given to understand that he is required to take proceedings in the courts to collect the debt.

APPEAL from a judgment, entered upon the verdict of a jury in favor of the defendant, at the Oswego Circuit.

*Giles S. Piper*, for the appellant.

*S. N. Dada*, for the respondent.

HAIGHT, J.:

This action is founded upon the following promissory note:

"HANNIBAL, *April* 28, 1877.

"On the twentieth day of March next, for value received, I promise to pay Reuben Terpening, or bearer, eighty-two dollars, with use.

(Signed.) "W. B. HUBBARD.
"HENRY JAMES.
"S. B. TERPENING.
"REUBEN TERPENING."

The note was originally executed by Henry James and S. B. Terpening, and delivered to Reuben Terpening, the payee. Reuben Terpening signed his name under that of S. B. Terpening, and transferred the note to the defendant, William B. Hubbard; William B. Hubbard subsequently transferred the note to John N. Draper. Previous to such transfer, Hubbard signed his name to such note at the end thereof, and above the other signatures; this he did at the request of Draper; Draper subsequently transferred the note to the plaintiff.

The first question presented on the part of the appellant is, that the signing of the note by the defendant Hubbard, at the end thereof, and above the names of all the others to the note, without their knowledge or consent, and before the note became due, was a material alteration of the note, so as to render it invalid to those who had previously executed it, and that the note thereby became the note of Hubbard alone, as maker. Upon this question there

is some conflict in the authorities. In the case of *Chappell* v. *Spencer* (23 Barb., 534), it was held, that the addition of a name to a joint and several note, under the names of the makers, was a material alteration which vitiated the instrument. This same doctrine was again held in the case of *Mc Vean* v. *Scott* (46 Barb., 379). The opinion in each of these cases was written by the same judge. They are the only cases in this State that we have been able to find that sustain the doctrine. On the contrary, it has been held, that such signing was not a material alteration so as to invalidate the instrument in the case of *Cobb* v. *Titus* (13 Barb., 45–49 ; S. C., affirmed 10 N. Y., 198). (*Partridge* v. *Colby*, 19 Barb., 248 ; *Burton* v. *Baker*, 31 id., 241–257 ; *McCaughey* v. *Smith*, 27 N. Y., 39 ; *Brownell* v. *Winnie*, 29 id., 400 ; *Card* v. *Miller*, 1 Hun, 504–506.) Our views are in accord with the latter cases cited. It is true that in those cases the signing of the additional name was under the name of the makers, but it does not appear to us that the distinction is material.

We are next called upon to consider whether the defendant is discharged from liability upon the note by reason of any extension of time given by the holder to the original maker. The evidence given upon the trial tended to show that Hubbard signed the note as surety, that James was the maker, and the person who ought to pay the note. Evidence was also given tending to show that James entered into an agreement with the plaintiff to forbear the payment of the debt for eight months, in consideration of the sum of five dollars, which it is claimed was paid ; that this agreement was made without the knowledge or consent of the defendant or other sureties upon the note.

The law is well settled that if the holder of a note enters into an agreement with the maker by which the time for payment is extended, without the consent of the indorsers or sureties upon the note, they become discharged from all liability thereon. Such agreement, however, must be a valid and binding agreement upon the parties, such as either can enforce against the other. The mere agreeing not to sue, unaccompanied with any consideration, without taking any new security, is not sufficient. It is but a *nudum pactum*, and will not discharge the indorsers or sureties upon the note. (*Halliday* v. *Hart*, 30 N. Y., 474–488, 489.)

If the agreement made to forbear the payment of the debt was made upon a usurious premium paid for such forbearance, such agreement is in violation of the statute, and void, and does not operate to discharge the sureties. ( *Vilas* v. *Jones*, 1 *Comstock*, 274–278 ; *The Real Estate Trust Co.* v. *Keech*, 69 N. Y., 248 ; *Church* v. *Malloy*, 70 id., 63.)

Whilst the payment of the five dollars for the extension of time would not invalidate the note, it did vitiate the agreement to extend the time of payment. The holder was not bound thereby, and could have proceeded at once to the collection of his demand.

We next inquire as to whether the plaintiff has been guilty of negligence in not enforcing collection upon his note when it matured and became due and payable. It is claimed on the part of the respondent that the holder of the note was called upon by Reuben Terpening, one of the sureties, and requested that he should proceed and collect the note ; that Terpening was a prior surety upon the note to the defendant, and that by discharging Terpening, this defendant would also be discharged. Whatever conversation there was upon the subject was had with Draper, the prior holder of the note. If the plaintiff purchased this note before maturity, and for full value, as he claims, then he occupies the position of an innocent holder, and would not be bound by this conversation. It is only upon the theory that he purchased after maturity, and took the note with all its infirmities, that he could be bound. Terpening testifies that "Draper called at my house a few days before the note was due and said to me that he held a note with my name on it and his business there was to see if I would sign an extension ; Mr. James wanted him to hold the note a certain time ; I don't recollect how long, but I think till fall ; I told him I was not to pay the note and it was not for me to give consent to any extension ; told him to go and see the other parties ; that I wouldn't give any consent but that I would see him again before the note became due ; the last day of grace I went to Fulton to see Draper ; he was in his brother's grocery store ; I asked him if he had seen the other parties to the note ; he said he was going to have the money ; that he had got to have the money on the note ; I told him *I was glad of it, that I wanted it collected immediately ; that it was collectible and I did not want my name on it any*

*longer;* he said that James had made arrangements with James Denick to take up the note." Draper testified: "Reuben Terpening never told me to go on and collect the note as I recollect; I don't remember of ever having any conversation with him at my brother's store; I don't remember positive, but might have had; the conversation I related was before the note was due at his house; I do not say he did not come into the store and tell me to collect the note; he came in there and we had some conversation about the note; I don't remember what it was."

This is all the evidence that was given upon the subject. There is also a conflict in the evidence as to the time the plaintiff purchased the note in suit. He testifies that he purchased it on the 30th day of March, 1878; that he paid full value for the note including the interest that had accrued thereon. If so he purchased before maturity and is an innocent holder. Other evidence, however, was given tending to show that he purchased the note at a later date and after it had matured. It appears from the evidence that at the time the note matured and became due that James was solvent. It does not appear that he has since become insolvent. It does, however, appear that he has departed from the State and now resides in Ness city, in the State of Kansas. Whether or not he still has property in this State does not appear from the evidence.

A surety upon a note or other instrument has the right to give the creditor notice to proceed against the principal and enforce collection of his demand by action, if not otherwise paid; and a failure to so proceed within a reasonable time will operate to discharge the surety, provided it be shown that the surety suffers by such delay. The solvency of the principal debtor at the time the surety requires the creditor to proceed with the collection of his demand, and the subsequent insolvency of the debtor, are good cause for discharging the surety. The notice of the creditor, however, must be clear and explicit, and the creditor must be given to understand that he is required to take proceedings in the courts to enforce the obligation, otherwise the surety will not be discharged. (*Hunt* v. *Purdy*, 82 N. Y., 486; *Toles* v. *Adee*, 84 id., 222–239.)

In the case at bar, after Draper had told Terpening that he had got to have the money on the note, Terpening merely replied that he

was glad of it; that he wanted it collected; that he didn't want his name on it longer. He was then told by Draper that James had made arrangements with the plaintiff to take up the note. To this information Terpening made no response. Was Draper by this conversation given to understand that Terpening then demanded that he should institute legal proceedings to collect the note, or else release him as surety? We think not. The conversation does not bring the parties within the rule of *Hunt* v. *Purdy* (*supra*). In that case the surety said to the holder of the mortgage, " Collect that mortgage in the spring; don't let it run over the time it is due." And yet the court in that case held that the words were not sufficient to give notice to proceed to collect by action.

Judgment should be reversed and a new trial ordered, costs to abide the event.

SMITH, P. J., and HARDIN, J., concurred.

So ordered.