(7 Misc. Rep. 656.)

NELSON et al. v. EASTON & A. R. CO.

(Common Pleas of New York City and County, General Term.    April 2, 1894.)

APPEAL—REVIEW—WEIGHT OF EVIDENCE.
      When and upon what principles the general term may set aside a verdict as against the weight of evidence.

(Syllabus by the Court.)

Appeal from trial term.

Action by Zachariah O. Nelson and another against the Easton & Amboy Railroad Company.    From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals.    Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

W. W. Goodrich, for appellant.
Anson B. Stewart, for respondents.

PRYOR, J.    The main contention of the appellant is that the verdict was against the weight of evidence.    Of the power and the

duty of this court, in a proper case, to set aside a verdict because against the weight of evidence, no question can be made and no doubt entertained. Hamilton v. Railroad Co., 53 N. Y. 25, 27; Kummer v. Railroad Co. (Com. Pl. N. Y.) 21 N. Y. Supp. 941. In what case the power exists and the duty is incumbent the court of appeals defines with precision and authority. "The general term has the power, and it is its duty, to examine and determine whether the verdict was against the weight of evidence and the justice of the case; and, if of opinion that it was, to set it aside and order a new trial.". Hamilton v. Railroad Co., supra. But "in reviewing the determination of a trial court on questions of fact, when the evidence is conflicting, an appellate court is not warranted in reversing, upon the sole ground that, in its opinion, the trial court should have reached a different conclusion; to justify a reversal it must appear that the proofs so clearly preponderated in favor of a contrary conclusion that it can be said with a reasonable degree of certainty that the trial court erred in its conclusion." Baird v. Mayor, etc., 96 N. Y. 567. And this upon the fundamental principle of our jurisprudence that ad quaestionem facti respondent juratores. "It is of the greatest consequence to the law of England and to the subject that these powers of the judge and the jury be distinct, that the judge determine the law and the jury the fact; and, if ever they come to be confounded, it will prove the confusion and destruction of the law of England." Lord Hardwicke in Rex v. Poole, Hardw. Cas. Temp. 28. "Whether there is any evidence is a question for the judge; whether the evidence is sufficient is a question for the jury." Broom, Leg. Max. 108. Wherefore, should the judge arbitrarily, or upon his own mere estimate of the probative force of the evidence, nullify a verdict, he would plainly usurp upon the province of the jury. With these principles for guidance, we are to determine whether the verdict before us should stand.

The action is for the value of a canal boat and cargo, lost at sea while in tow of the defendant's tugs. The responsibility of the defendant is not as common carrier; but it is bound only to ordinary care and skill, and is liable only for the correlative degree of negligence. Caton v. Rumney, 13 Wend. 387; Alexander v. Greene, 3 Hill, 9; Wells v. Navigation Co., 2 N. Y. 204. The concession is that the defendant's tugs were in all respects sufficient, and the tow properly made up; and as the competency of the men in control of the fleet was not impeached by evidence, that, too, must be accepted as a fact in the case. The charge in the complaint is that plaintiffs' loss was the effect of negligent navigation. Effort was made on the trial to show that the wreck of the boat was due to want of skill or of care in putting back from the fury of the storm; but this, as appeared by unchallenged proof, was the proper thing to do, and was done in the proper manner. The only fault imputed to the defendant, upon the evidence and recognized by the court, was that it ventured out with its tow in the face of a peril which no prudent seaman would have encountered. The critical point was as to the menace of danger at the moment when the master declined a refuge in the Kills,

and resolved to proceed across the bay. A witness testified that "it was blowing very hard; it was blowing a gale when we got to the mouth of the Kills." Another: "The wind, as the tow went out of the Kills, was blowing hard." Another: "It commenced to snow and blow pretty hard; the wind was northwest; a perfect winter wind came; from that the wind increased in velocity. It was a holy terror, you might say; the worst I have been in for forty years." Another, an expert, that "the weather was not fit to take any boat out; there is no captain would do it; I wouldn't go in the boat if he would." Still another, also an expert: "It was blowing a gale, hard, and snowing; it was not prudent to take the tow out of the Kills into the open bay." Evidence was given of a custom of tows going out of the Kills, if the wind was blowing hard, to stop at Port Johnson; and the fact was conceded that, after the tow got into the open water, a storm overtook it, in the fury of which the plaintiffs' boat was sunk. Undoubtedly, evidence to the contrary of this testimony was adduced by the defendant, which, if believed, would authorize the inference of due care in venturing out of the Kills. But, upon the conflict between the witnesses, it was for the jury to determine their credibility, and to ascertain the real fact. The issue was presented to them in a charge singularly clear and comprehensive, and so favorable to the appellant that no exception was taken to any of its propositions. The jury were instructed that the defendant was liable only on the ground of negligence; that an error of judgment on the part of the master was not even presumptive evidence of negligence; that, where the circumstances are evenly balanced which indicate a choice of action in time of danger, the master's decision in the matter of navigating the vessel is conclusive; that, in considering the action of the master, the question was not whether his order was the best in the light of subsequent events, but whether, under the circumstances in which he was placed, it was that of a prudent and skillful commander; that, if the person in charge of the navigation of the tow used reasonable judgment, the verdict must be for the defendant. What more could the appellant have asked? How was it possible for the jury to err adversely to appellant in the application of the law to the evidence? The inevitable inference from the charge is that the jury found upon the issue in conformity with the testimony of the plaintiffs' witnesses; and it is not for us to substitute our opinion for the judgment of the tribunal constituted by law to try the facts. Even if the witnesses for the defendant be greater in number, it matters not; witnesses are weighed, not counted; and the testimony of the discredited many is overborne by the testimony of the credible few. The opportunity of observing the demeanor of the competing witnesses is of inestimable value in testing the truth of their testimony; and, destitute of so decisive a criterion, we are not at liberty to challenge the determination of the jury, unless, indeed, it involve a conclusion that shocks the judgment, or betrays misapprehension, or imports the bias of some sinister interest or disturbing passion. We are clear in the conviction that to set aside this verdict would be an encroachment

on the constitutional function of the jury. The seaworthiness of the plaintiffs' boat was also an issue on conflicting evidence, which the verdict of the jury conclusively settles.

It remains to examine appellant's exceptions to the admission of evidence. We are of opinion that the witness Nelson knew enough of the boat to testify of its condition, the value of his evidence being for the jury. Assuming, but not deciding, that the bill of lading was not competent evidence of the quantity of coal aboard, there is no available error in its admission, because the ground of objection stated was "that the action is for damages to the boat; and he cannot join with that an action for the coal of which he was simply bailee." Had the specific objection been that the paper was not competent evidence of the quantity of coal, the offer might have been waived, and other proper proof produced. The avowed ground of objection was clearly untenable. A bailee for hire has a right of action for injury to property in his possession, and may recover the entire damage. 4 Lawson, Rights, Rem. & Pr. § 1733; Bliss v. Schaub, 48 Barb. 339. Especially has a common carrier the right, since he is answerable to the shipper for any loss not the effect of vis major. Other exceptions are so obviously invalid as to dispense with special criticism. Judgment and order affirmed, with costs. All concur.