Fred A. Young, J.
The claimant sues the State of New York alleging an assault on him by a State trooper. His claim is thoroughly discredited by the preponderance of the credible evidence.
On September 6,1958, Frederick G. Gregory of the New York State police saw a crowd gathered around a fight outside a tavern in Dunkirk. He stopped his car and got out to investigate. The crowd, seeing his approach, separated the fighters — the claimant and one Maori. Macri went into an adjoining tavern. The claimant was restrained by two of his friends. But, either blind in his rage or omnipotent in his own opinion, he broke away and advanced menacingly on the trooper. The trooper advised him he was under arrest. He lunged at the trooper. The trooper hit him over the head with a night stick— hard enough to draw blood but not hard enough to stop him. The claimant pressed his attack. The trooper struck again, this time hitting the claimant’s right hand.
Then came a manifestation of that disturbing social enigma increasingly noted by law-enforcement bodies. The crowd, instead of assisting the officer or preserving order, shed any vestiges of its respect for the law. It laid bare its contempt for authority. Its animal emotions aroused by the sight of the claimant’s blood, the crowd turned hostile. Faced by this mob, the trooper strategically retreated to his car and called for reinforcements. Before their arrival, the claimant was hustled to a hospital by his friends, and, pending their arrival, Macri sought sanctuary in the troop car from the vengeance of the mob.
Ultimately, the claimant pleaded guilty to a third-degree assault on the trooper. He was fined $250 and given a suspended sentence of six months in jail.
We find these to be the facts giving rise to this claim. In doing so we totally reject the hypothesis advanced by the claimant for several reasons. We shall discuss these in turn.
The claimant has allowed his conviction for criminal assault, entered upon his own plea of guilt, to stand without attack direct or collateral. This belies his present assertion that it occurred in a “ kangaroo court”, as it belies his present posture of innocence.
The State trooper was a credible witness. He acted creditably under the circumstances. This court finds that he was an experienced policeman, that he had a duty to subdue the claimant *914 and that he did so only with such force of arms as the occasion demanded. We cannot refrain from commenting also that his conduct before the mob showed discipline, discretion and superior training, characteristic of the fine organization of which he is a member.
It has been said that there is plenty of law at the end of a night stick. Flippant this may be but it contains a germ of the truth. We concur with the night stick policy recently established for the New York City police that “taking a prisoner into custody is not a personal contest between you and him. Forget the Marquis of Queensbury Rules ”. We add that if a policeman’s duty to the public demands his use of his night stick, so be it.
The claimant contends that the trooper struck him only one blow and that on the head. This was claimed presumably on the theory that proof of a second blow would indicate aggressiveness by the claimant after the first blow. The claimant’s one-blow contention is, however, thoroughly contradicted, and his credibility impugned, by unimpeached evidence. On the date of his arraignment, two days after the fight, the claimant appeared in court with his right hand bandaged. A week after the fight he had his right thumb X-rayed. His assertion that the only injury to his right thumb occurred years before was demolished by a doctor’s testimony that the X rays showed a very recent fracture.
It is true that the claimant produced nine witnesses to the fracas and the State but two. But it is also true that “ witnesses are weighed, not counted ” (Nelson v. Easton & Amboy R. R. Co., 7 Misc. 656, 659). The court’s sole impression of the claimant ’s witnesses is of a succession of parrot-like recitals of identical stories, well rehearsed and completely concocted. If motive need be assigned, we suggest that theirs was an effort to put the best possible light on their own reprehensible conduct on that dark night. The claim must be dismissed.